W. L. McCLELLAND *et al. v.* J. W. DAVIS *et al.*

GUARDIAN AND WARD. *Security on guardian bond. Priority.* The recovery by infant wards of a decree against the personal representative of the deceased guardian for the amount due them to be paid *pro rata* with other claims, the estate being insolvent, will enure to the benefit of the sureties on the several guardian bonds in the order of liability fixed by law, and sureties secondarily liable may assert their priority of satisfaction against the assignee of a surety primarily liable, who takes with knowledge of the equity.

FROM GILES.

Appeal from the Chancery Court at Pulaski. W. S. FLEMING, Ch.

I. N. BARNETT and G. T. HUGHES, for Complainants.

W. H. McCALLUM, for Defendants.

McClelland *v.* Davis.

COOPER, J., delivered the opinion of the Court.

In July, 1855, Henry J. Walker was appointed guardian of his three infant children, Sarah J., who afterwards intermarried with W. D. Smith, John W., and Tennessee Walker, and qualified by giving bond in the penalty of $5000, with W. L. Mc-Clelland and George M. Brandon as his sureties. On the 7th of June, 1858, he renewed his bond as guardian, with J. W. Davis and George W. Walker as his sureties, in the penalty of $6000. On the 28th of November, 1871, Henry J. Walker died, and S. G. Colvert was appointed and qualified as executor of his will. On the 11th of July, 1872, Colvert filed his bill against the children and devisees of his testator, suggesting that the personal assets of the estate would fall far short of paying the debts, and that it would be necessary to sell realty for the purpose, and asking that the administration of the estate be transferred to the Chancery Court. One main object of the bill was to ascertain, by proper account and decree, the indebtedness of the testator to his three children by reason of the guardianship as aforesaid. Such proceedings were had in this cause that, on the 3rd of November, 1874, a report was made and confirmed ascertaining the amount due from the estate to each of the wards, and a decree was rendered in favor of each ward against the complainant as executor, for the amount so found, with interest from the 1st of September, 1874, " which said sev-

McClelland *v.* Davis.

eral sums," says the decree, "will be paid *pro rata* out of the estate of the said Henry J. Walker, deceased, now being settled as an insolvent estate under the orders of this Court in this cause." By a subsequent decree, some credits for payments made by the executor were allowed, leaving the judgments in other respects in full force. Owing to litigation over some of the liabilities of the estate, only terminated by a decree of this Court at its present term, no dividend of the assets of Henry J. Walker's estate has yet been made, and the cause in which the judgments were rendered in favor of the children is still pending.

The children, not being content to wait the winding up of the estate of their father, brought their bill against Colvert, as executor, and the sureties on both of the guardian bonds, and took such proceedings that, on the 19th of November, 1875, they recovered a judgment for $7,787.87 against the executor Colvert and the sureties on the two bonds, the sureties on the second bond being declared primarily liable to the extent of $6,000, the penalty of the bond, and the sureties on the first bond declared liable for the excess of liability over that penalty, and to the extent of $5.000, the penalty of their bond, for any amount that could not be made out of the sureties on the second bond. The whole amount of this recovery was collected under the decree, J. W. Davis, the surety on the second bond, paying about $4,000, and the

sureties on the first bond being compelled to pay the residue.

On the 18th of December, 1877, J. W. Davis filed a petition in the insolvent suit of Colvert against the Walker children, stating the fact of his suretyship, and that he had paid $4,000 on the recovery had against him, and asking to be made a party defendant to that suit, and that his claim be allowed. On the same day he assigned his claim by reason of the payment to W. D. Smith, who a few days thereafter assigned the same to W. F. Stone in trust for the benefit of Smith's wife. Such proceedings were had under this petition that, on the 4th of March, 1878, a decree was rendered allowing the claim, directing it to be placed in the schedule of debts entitled to share *pro rata* in the assets of Walker's estate in that cause, and, reciting the transfers, authorizing the *pro rata* to be paid to Stone. None of the other sureties seem ever to have become parties to that suit.

On the 19th of August, 1878, the bill now before us was filed, by which, and the amended and supplemental bills subsequently filed, Davis, Smith, Stone and Colvert were made defendants, and the complainants, McClelland and Brandon, as the sureties on the first guardian bond, claim that they are entitled, by subrogation to the rights of the wards under the judgment rendered in their favor in the insolvent suit, for the amount found due to them from their guardian, to have the *pro rata* dividend which may be paid thereon by Walker's es-

McClelland *v.* Davis.

tate applied in satisfaction of the general indebt-edness of the guardian to the wards, and, to that extent, in exoneration of their secondary liability as sureties on the first bond. Of this opinion was the Chancellor, who rendered a decree accordingly, and the defendants appealed.

If the original suit of Colvert, in which the liability of the guardian was ascertained, had made the sureties on both the bonds parties defendant, the proper decree would have been that the *pro rata* dividend of the estate should be applied in extinguishment of so much of the debt, that the sureties on the second bond should be primarily liable for the deficiency to the extent of $6,000, and the sureties on the first bond only secondarily liable. If the dividend had paid the debt so as to reduce it below $6,000, the latter sureties would have been *pro tanto* exonerated. The wards would, of course, have had the right to a decree at once against the sureties, without waiting for the dividend, but the decree would have declared the rights of the parties so as to have worked out the proper result by subrogation. As between the two sets of sureties, the first sureties were entitled to be subrogated to the rights of the wards to so much of their recovery as might be required to fully indemnify them. So, too, if the sureties had all made themselves parties to that suit after the rendition of the decree against them, or after the payment thereof, the Court would have adjusted the equities in the same way, although the new claims by reason

McClelland v. Davis.

of the judgment or the respective payments, might have been allowed against the estate: *Ewing* v. *Maury*, 1 South, L. J., 31.

The fact that the recovery of the wards against the sureties was by a separate bill, and that the two sets of sureties have proceeded differently to assert their rights against the estate, cannot change the result. No objection has been taken by the defendants to the more expensive mode of proceeding adopted by these complainants. They could have asserted their equity in the insolvent suit, and also in the suit in which the recovery was had against them, and no reason occurs why they cannot do the same thing by an independent bill, if the defendants raise no objection on that score. The equities of the parties are fixed by the decrees settling their relative liabilities precisely as if they had all been made in the same case, and the assignee of Davis can stand in no better attitude in relation to these equities than Davis himself. The assignees moreover are, so far as appears, mere volunteers, and at any rate are assignees with full knowledge of the complainants' equity.

There is no error in the decree, and it will be affirmed with costs. The costs below will be paid as ordered by the Chancellor.